IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONDRA D. MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02:06cv0724 |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

September 7, 2007

**I.     Introduction**

Plaintiff, Sondra D. Morgan, brought this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), which incorporates § 405(g) by reference, for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-1383(f).

**II.    Background**

   **A.    Facts**

Plaintiff was born on February 2, 1964 and was 41 years old at the time of the decision of the Administrative Law Judge ("ALJ").   She earned her general education degree, completed

---

[1] Michael J. Astrue became the Commissioner of Social Security, effective February 12, 2007, to succeed Linda S. McMahon, Acting Commissioner of Social Security. Under Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

1

twenty-five (25) college credits, and graduated from a vocational school. She has past relevant work experience as a waitress, customer service representative, and telemarketer. The vocational expert testified that these past jobs were semi-skilled in nature and performed at a sedentary to light exertional level. (R. 319)

Plaintiff alleges disability as of January 13, 2004, due to depression and a personality disorder. The record reflects that Plaintiff has not engaged in substantial gainful activity since her alleged onset date.

### B.      Procedural History

Plaintiff filed her applications for DIB and SSI on January 22, 2004, in which she claims total disability since January 13, 2004. The Commissioner denied Plaintiff's applications at the initial level of administrative review. An administrative hearing was held on July 13, 2005, before Administrative Law Judge David J. Kozma ("ALJ"). Plaintiff was represented by counsel and testified at the hearing. Also testifying at the hearing was Karen Krull, M.Ed., an impartial vocational expert.

On January 13, 2006, the ALJ rendered a decision unfavorable to Plaintiff in which he found that Plaintiff retained the residual functional capacity to perform work at the sedentary

exertional level, with restrictions[2] and, therefore, was not "disabled" within the meaning of the Act.

The ALJ's decision became the final decision of the Commissioner on April 5, 2006, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On June 6, 2006, Plaintiff filed her Complaint in this Court in which she seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff argues that the decision of the ALJ is not supported by the factual and medical evidence of record. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

### III.   Legal Analysis

#### A.   Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 405(g) and 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined

---

[2] Specifically, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work within the following parameters:
"the claimant is able to understand, remember and/or carry out only simple straight-forward written or verbal instructions, must have limited contact with the public, and is capable of tolerating only low levels of stress." ALJ Decision, Finding No. 5.

"substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

In situations where claimants have filed concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act.  *See Kapusta v. Sullivan*, 900 F.2d 95, 95 n.4 (7th Cir. 1989) ("The standards for disability benefits and Supplemental Security Income are identical, so we treat . . . [the claimant's] applications as one"); *Davis v. Heckler*, 748 F.2d 293, 295 n.2 (5th Cir. 1984) (claims for SSI and DIB are treated together because "the relevant law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental income benefits).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from

4

engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982).

This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."

*Campbell*, 461U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education., and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider

the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process.  In making this determination, and relying on the testimony of the vocational expert, the ALJ concluded that jobs exist in the national economy that Plaintiff can perform given her age, education, work experience, and residual functional capacity.

**B.     Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff argues that (i) the ALJ failed to give the medical opinions of Plaintiff's psychiatrist and psychiatric nurse controlling weight; and (2) the ALJ erred in relying on a defective hypothetical and response given by the Vocational Expert.

1.      *The ALJ Properly Evaluated the Medical Evidence of Record From Plaintiff's Treating Psychiatrist*

Plaintiff contends that the ALJ failed to give proper consideration to the medical opinion of her treating psychiatrist, Ariel Gildengers, M.D.  "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted).  The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason."  *Id.* at 317 (*quoting Plummer*, 186 F.3d at 429).

The medical evidence of record reflects that Plaintiff has been treated for depression at Western Psychiatric Institute and Clinic ("WPIC") since September 2001.  In January 2004, Plaintiff's diagnosis was depression in partial remission and her medication was changed to Lexapro with no reported side effects.  Her treating psychiatrist, Ariel Gildengers, M.D., and therapist, Rebecca Labovick, R.N., considered Plaintiff's primary issue to be related to her financial situation.  The medical record reflects that Ms. Labovick encouraged Plaintiff to follow up with the Department of Public Welfare for temporary benefits and to file applications for Social Security benefits "as a means to financially stabilize." (R. at 103.)  Dr. Gildengers completed an Employability Assessment Form to assist Plaintiff in obtaining welfare benefits and on the form indicated that Plaintiff was permanently disabled.  (R. at 204.)   Dr. Gildengers listed Plaintiff's primary diagnosis as major depressive disorder and did not indicate that her depression was in partial remission as her treatment records indicated.  (R. at 204, 205.)

7

Records from WPIC dated February 2004 through July 2004 include reports of financial, housing and social stressors.  In August 2004, Plaintiff did not take her medication for several days and reported "not doing well." (R. at 269.)  At that time, she also decided to change her treatment facility to Mercy Behavioral Health (R. at 266.)  At her exit interview with WPIC, Dr. Gildengers and Ms. Labovick stated that Plaintiff's diagnoses included depression in partial remission and a personality disorder.  (R. at 263.)

In December 2004, Plaintiff called Ms. Labovick and reported that she was using marijuana, not taking her medications, not attending her appointments at Mercy Behavioral Health, and having numerous financial /social stressors.  (R. at 260.)  After resuming her medications, Plaintiff reported a "noted difference in mood."  (R. at 256.)  She thereafter returned to WPIC for treatment.

In March 2005, Plaintiff reported working for three weeks but then walking out.  On examination, Dr. Gildengers described Plaintiff as tired, but pleasant with fair eye-contact.  (R. at 289.)  While her mood was depressed, Dr. Gildengers noted that Plaintiff's speech was normal and her thoughts were coherent.

In early April 2005, Plaintiff reported to Dr. Gildengers that she was "doing well on [her] current medications," and reported that she had a recent physical altercation with her neighbor and was having financial stressors.  (R. at 244.)

In May 2005, Dr. Gildengers completed a Mental Status Questionnaire and opined that Plaintiff would not be able to maintain work activity for eight (8) hours a day on a continued basis, based on her past work history.  (R. at 297.)

At the administrative hearing in July 2005, Plaintiff testified that her overall symptomology was slightly better than it had been and acknowledged that her ability to function was "slightly better" than it was the previous year and a half ago. (R. at 316.)

Upon review of the medical evidence of record, the ALJ determined that Plaintiff had severe limitations, including depression and anxiety disorder. However, he found that while these impairments were severe, the impairments did not meet or equal an impairment listed in sections 12.04, 12.06, and/or 12.08.

Under the regulations, the opinion of a treating physician concerning the nature and severity of an individual's impairment is entitled to controlling weight only if it is consistent with the other evidence of record and well-supported with clinical and diagnostic findings. 20 C.F.R. § 404.1527(d)(3)(-(4). Where an opinion as to disability is contained in a form report unaccompanied by a thorough written report, its reliability is suspect. *See Brewster v. Heckler*, 786 F.3d 581, 585 (3d Cir. 1986). To the extent that Plaintiff is correct that a treating physician's findings and opinions are entitled to greater weight than attributed to it by the ALJ, the Court is guided by the pronouncement of the Court of the Appeals for the Third Circuit in *Adorno v. Shalala*, 40 F.3d 43 (3d Cir. 1994):

> A statement by a plaintiff's treating physician supporting an assertion that [she] is "disabled" or "unable to work" is not dispositive of the issue. The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability. In doing so, the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant.

*Id*. at 47-48 (citations omitted); 20 C.F.R. § 404.1527(e).  The determination of disability, which is a legal determination, is ultimately for the Commissioner and not a medical source.  20 C.F.R. §§404.1527(e).

The record reflects that the ALJ accorded the opinion of Dr. Gildengers that Plaintiff could not work little weight. The ALJ noted that "ordinarily a treating physician's opinion is entitled to controlling weight, it must be well-supported and not inconsistent with the other substantial evidence of the record (SSR 96-2p).  (Decision of ALJ, at 5.)  First, the ALJ observed that Dr. Gildengers' opinion that Plaintiff could not work touched on the ultimate issue of disability, a finding reserved to the Commissioner.

Next, the ALJ found that Dr. Gildengers' opinion of total disability was not supported by her own treatment notes.  The treatment records reflect that since April 4, 2003 (one year prior to the alleged onset date) Plaintiff's major depressive disorder was in partial remission.  The ALJ found that the continued diagnosis of depression in partial remission indicated that Plaintiff's symptomology has not worsened since before her alleged onset date, a time in which she worked on a continued basis.  Further, the vast majority of treatment notes reflect Plaintiff's complaints with regard to social stressors, most of which were financial.  Plaintiff's treatment never required psychiatric hospitalization or significant change to her medication.

Last, the ALJ found that Dr. Gildengers' opinion that Plaintiff could not work was not consistent with Plaintiff's self described activities and her testimony at the administrative hearing. In February 2004, Plaintiff reported that she cleaned, cooked, and went food and clothing shopping.  (R. at 86-87).  She handled her own bills, cared for her own personal needs, and did not need reminders to take her medication.  (*Id.*, R. at 89.)  She stated that she could make decisions

on her own, and that she understood instructions and could carry them out. (*Id.*)  At the administrative hearing, Plaintiff testified that she was independent in all activities of daily living; that although undergoing treatment for depression for four (4) years, she was able to maintain employment during the majority of that time; and that her depression was improving.

The Court finds that the ALJ observed the proper legal standards in evaluating the opinion of Dr. Glindengers.  As such, the Court concludes that there is substantial evidence of record to support the ALJ's decision to reject Dr. Glindengers' opinion that Plaintiff is totally disabled.

2.    *The ALJ Properly Relied Upon A Complete Hypothetical.*

In order to determine whether a claimant is capable of performing other substantial gainful activity that exists in significant numbers in the national economy, the ALJ may rely upon the testimony of a vocational expert ("VE").  Testimony of a VE constitutes substantial evidence for purposes of judicial review when a hypothetical question encompasses all of a claimant's impairments which are supported by the medical record.  *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004; *Burns v. Barnhart,* 312 F.3d 113, 120 (3d Cir. 2002); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  Hypothetical questions need only include factors that are supported by objective medical evidence contained in the record.  *Chrupcala*, 829 F.3d at 1271.  It is not necessary for the ALJ to include facts in the hypothetical question that are supported <u>only</u> by a claimant's subjective testimony.  *Id.*

The ALJ posed two hypotheticals to the VE at the administrative hearing in this matter.  In the first hypothetical, the ALJ asked the VE the following:

11

> For this hypothetical question[] I would like for you to assume the age of 41, a GED plus the college studies, and I'd like you to assume what we heard in the way of testimony, being that's the case, any type of work?

(R. at 319.)

The VE responded that no type of work existed for such an individual because "she sleeps much of the day. She has a lot of crying spells, and her mood changes from day to day." (*Id.*)

The ALJ then asked a second hypothetical:

> For purposes of this hypothetical question I'd like you to assume there would be no physical restrictions, but like you to assume there would be no physical restrictions, but (INAUDIBLE) exertionally, it would have to be low stress in nature. By low stress in nature I mean not - - maybe simple repetitive tasks, not a lot of involvement with the public or a lot of time with the other co-workers. Any jobs fall within that category?

(R. at 319)

The VE responded:

> Yes, Your Honor, there would be jobs that would fall within that category. One would be laundry worker, at the medium level, there are about 55, 000 nationally. Another job that would be appropriate would be a kitchen worker at the light exertional level 110,000 exists nationally. And a third example would be file clerk, and those would number approximately 150,000 nationally at the light exertional level.

(R. at 319-320.)

Counsel for Plaintiff then asked the VE the following:

> If as stated by the treating psychiatrist a person decompensated even in response to basic work stresses such that they would be likely to miss anywhere between 4 and 7 days per month of work at a minimum. How, if at all - - and if we added that let's say to the judge's second hypothetical, how, if at all, would that affect your answer to that hypothetical.

(R. at 320.)

The VE responded:

That individual would not be able to work in any national economy.

(*Id.*).

The record reflects that the ALJ rejected the VE's response to the first hypothetical and to the hypothetical posed by Plaintiff's attorney because the limitations and subjective testimony of Plaintiff, as well as the opinions of Dr. Gildengers, which were included in those hypotheticals, were not supported by the objective evidence.  The first hypothetical proffered by the ALJ included Plaintiff's subjective testimony.  However, the ALJ found that Plaintiff's testimony concerning the intensity, duration and limiting effects of her depression and personality disorder was not entirely credible, as there was no medical evidence that corroborated her allegations.  (See Decision of ALJ, at 5.)

The Court finds and rules that the ALJ properly accepted the VE's responses to the ALJ's second hypothetical, which as discussed above, accurately represented Plaintiff's age, background, and residual functional capacity based on the objective medical evidence.

Accordingly, the Court finds that the ALJ's determination that Plaintiff is capable of performing various jobs that exist in significant numbers in the national economy is supported by substantial evidence.  *Chrupcala,* 829 F.2d at 1271.

## IV.     Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court

must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that she remains able to perform a significant range of sedentary work which exists in the national economy.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONDRA D. MORGAN, | ) |
| Plaintiff, | ) |
| v. | ) 02:06cv0724 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

### ORDER OF COURT

AND NOW, this 7th day of September, 2007, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. The Motion for Summary Judgment filed by Plaintiff, Sondra D. Morgan (Document No. 10) is **DENIED**;

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 12) is **GRANTED;** and

3. The Clerk of Court is to docket this case closed forthwith.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Karl E. Osterhout, Esquire
Email: karl@keolaw.com

Megan Farrell,
Assistant U.S. Attorney
Email: megan.farrell@usdoj.gov